UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELECTRICAL WORKERS INSURANCE
FUND,                                             Case No. 08-14738

    Plaintiff(s),                         Honorable Nancy G. Edmunds

v.

KATHLEEN SEBELIUS, in her official
capacity as SECRETARY, UNITED
STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

    Defendant(s).
_____/

# OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17] AND GRANTING DEFENDANT'S MOTION FOR VOLUNTARY REMAND [18]

This matter comes before the Court on Plaintiff's motion for summary judgment and Defendant's motion for voluntary remand. For the reasons set forth below, Plaintiff's motion is DENIED without prejudice and Defendant's motion is GRANTED. This Court STAYS the case pending the publication and implementation of an Indirect Payment Process (IPP) by the Secretary of the United States Department of Health and Human Service (HHS).

HHS shall comply with all dictates of 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66 in implementing the IPP and developing agency policy and guidance regarding the process. HHS is also is directed to file status reports within 90 days of the date of this Order, and at 60-day intervals thereafter.

**I.    Facts**

In its Amended Complaint, Plaintiff Electrical Workers Insurance Fund (EWIF), a jointly administered trust fund which provides health benefits to active and retired members of the Electrical Workers Local Union No. 58, challenges the refusal by HHS[1] to allow EWIF to submit certain Medicare Part B claims on behalf of its participants and to receive reimbursement for such claims through the indirect payment provisions of the Social Security Act. *See* 42 U.S.C. § 1395u(b)(6)(B); 42 C.F.R. § 424.66.

On December 6, 2007, EWIF filed a claim seeking reimbursement of approximately $400,000 for prescription drug benefits paid on behalf of its participants under Medicare Part B. (Madonna Decl., Pl.'s Mot., Ex. 3 ¶ 2; Eggersten Decl., Pl.'s Mot., Ex. 2 ¶ 3.) EWIF filed its claim under the IPP associated with 42 U.S.C. § 1395u(b)(6)(B), 42 C.F.R. § 424.66, and the Medicare Claims Processing Manual Ch. 1 § 30.2.8.3. (Pl.'s Mot., Ex. 2-A.) Those claims were filed with Wisconsin Physician Service Insurance Corporation (WPS), an HHS contractor administering Medicare Part B coverage and claim processing.[2] (*Id.*)

Sometime prior to April 30, 2008, WPS referred EWIF's claim to the Center for Medicare and Medicaid Services (CMS), a component agency of HHS.[3] (Eggersten Decl. ¶¶ 5, 6.) On July 8, 2008, CMS informed EWIF of its decision to reject the claims.

> CMS has reviewed [EWIF's] request for indirect payments. Based on our review, we have determined [that] EWIF is not entitled to indirect payments.

---

[1] HHS is the governmental agency charged with the administration of the Medicare program, including the promulgation of regulations for the administration of the Medicare payment policies and procedures.

[2] Under 42 U.S.C. § 1395u, HHS is authorized to contract with public or private agencies or organizations in administering Medicare Part B.

[3] CMS administers Medicare's health care program for aged and disabled individuals.

2

(Pl.'s Mot., Ex. 2-B.)

According to HHS, EWIF's claims were denied for three reasons. First, the agency claimed that the statutory authorities upon which EWIF relied, 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66, provided only that Medicare "may" pay group health plans (like EWIF) pursuant to an IPP, not that Medicare must do so. Section 1395u(b)(6)(B) provides:

> payment *may* be made to an entity (i) which provides coverage of the services under a health benefits plan, but only to the extent that payment is not made under this part ...

42 U.S.C. § 1395u(b)(6)(B) (emphasis added). Section 424.66 provides:

> Medicare *may* pay an entity for Part B services furnished by a physician or other supplier if the entity meets all of the following requirements ...

42 C.F.R. § 424.66 (emphasis added). And, Medicare choose not to allow reimbursement to group health plans. (Pl.'s Mot., Ex. 2-B.) Second, the agency contended the IPP, formerly available to group health plans (like EWIF) under 42 C.F.R. § 424.66, was no longer available following the issuance of 42 C.F.R. § 424.500—as § 424.500 superceded § 424.66 and it only permitted providers and suppliers of Medicare benefits, not group health plans, to enroll with Medicare for third party reimbursement.[4] Since EWIF was not

---

[4] According to EWIF, the former "IPP and its predecessor, the 'Payment to Organizations Regulation,' have been in effect for almost 40 years to give a qualifying entity, such as [EWIF], the right to receive payments instead of requiring a Medicare beneficiary to file a claim with Medicare and, upon receipt of Medicare's check, signing it over to the qualifying entity that already had paid the bill." (Compl. ¶ 33.) In the 1990's, CMS promulgated Form 1490u (entitled "Request For Medicare Payment By Organizations Which Qualify To Receive Payment For Paid Bills") for use by group heath plans, like EWIF, to facilitate the processing of Medicare Part B third party reimbursement claims. (Compl. ¶ 46.) In 2006, HHS issued 42 C.F.R. § 424.500 which created another IPP that only permitted providers and suppliers, not group health plans, to participate. (Compl. ¶ 32.) CMS, thereafter, discontinued the use of Form 1490u and replaced it with Form 1500—for claims submitted by physicians and suppliers—and form 1490S—for claims submitted by beneficiaries. (Compl. ¶¶ 47-48.) CMS did not, however, create a replacement form for

3

a provider or supplier, it could not utilized the IPP under § 424.500, thus, EWIF could not be reimbursed by Medicare. Third, the agency asserted that EWIF had not received the necessary approval (or approval number) to submit third party reimbursement claims.

As a result of the decision to reject its claims and deny its application for reimbursement—pursuant to the IPP formerly available to group health plans under 42 U.S.C. § 1395u(b)(6)(B), 42 C.F.R. § 424.66, and the Medicare Claims Processing Manual Ch. 1 § 30.2.8.3—EWIF alleges that it "has not been reimbursed for approximately $380,000 which [it] has paid for Medicare Part B Covered Drugs and deprived [its] participants of over $22,000 in co-pays and deductibles that they paid ... for Medicare Part B Covered Drugs." (Pl.'s Mot. at 16.)

---

entities like EWIF. (Compl. ¶ 49.) According to HHS, it decided to discontinue Form 1490u without creating a replacement form for group health plans, in part, because "a very small number of suppliers currently use the ... form[] and the agency has determined that there would be considerable cost in redesigning these forms to accept the National Provider Identifier." (Compl. ¶ 47 (quoting CMS Transmittal 1144).) HHS, in ceasing to accept Form 1490u from group health plans, effectively cancelled the administration of the IPP previously available under C.F.R. § 424.66 thereby foreclosing entities like EWIF from seeking Medicare Part B reimbursement on behalf of its participants.

EWIF filed this action seeking, *inter alia*,[5] a process (i.e., an IPP like the former IPP available to group health plans) whereby it is permitted to submit Medicare Part B claims on behalf of its participants and entitled to receive applicable Medicare Part B reimbursement payments. HHS has now determined that such a process would be appropriate under the criteria set forth in 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66. HHS, however, contends that it does not currently have an IPP in place to permit group health plans (like EWIF) to do that which EWIF seeks. Thus, HHS requests a voluntary remand of this action to implement an IPP that would be available to group health plans (like EWIF) and also to develop agency policy and guidance regarding such a process.

This matter is before the Court on Plaintiff's motion for summary judgment and Defendant's motion for voluntary remand, both filed on December 14, 2009. HHS argues that Plaintiff's motion for summary judgment should be denied as HHS is seeking voluntary remand for the purpose of establishing a new IPP—consistent with 42 U.S.C. §

---

[5] EWIF filed this action seeking declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202, a petition for writ of mandamus under 28 U.S.C. § 1361 and costs and fees under 28 U.S.C. § 2412. (Am. Compl. ¶ 10.)
> The Fund seeks a judgment declaring that the Fund is entitled to reimbursement pursuant to 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. 424.66 ("the Indirect Payment Procedure"), for benefit payments made by the Fund that were payable under the Medicare Act. The Fund also seeks a writ of mandamus ordering and directing the HHS and its authorized representatives to accept the Fund's claims for reimbursement for Part B drug claims that were dispensed to Medicare beneficiaries for processing and payment under the Indirect Payment Procedure and an order enjoining Defendant from refusing to consider such claims under the Indirect Payment Procedure.

(*Id.* ¶ 15.)

1395u(b)(6)(B)[6] and 42 C.F.R. § 424.66;[7] —through which EWIF could submit its claims. (Def.'s Resp. at 5.) Thus, HHS seeks remand so that it may develop and implement the very process that EWIF seeks.

## II. Analysis

---

[6] 42 U.S.C. § 1395u(b)(6)(B) provides:
No payment under this part for a service provided to any individual shall (except as provided in section 1395gg of this title) be made to anyone other than such individual or ... the physician or other person who provided the service, except that ... (B) payment may be made to an entity (i) which provides coverage of the services under a health benefits plan, but only to the extent that payment is not made under this part, (ii) which has paid the person who provided the service an amount (including the amount payable under this part) which that person has accepted as payment in full for the service, and (iii) to which the individual has agreed in writing that payment may be made under this part...

[7] 42 C.F.R. § 424.66 provides:
(a) Conditions for payment. Medicare may pay an entity for Part B services furnished by a physician or other supplier if the entity meets all of the following requirements: (1) Provides coverage of the service under a complementary health benefit plan (this is, the coverage that the plan provides is complementary to Medicare benefits and covers only the amount by which the Part B payment falls short of the approved charge for the service under the plan). (2) Has paid the person who provided the service an amount (including the amount payable under the Medicare program) that the person accepts as full payment. (3) Has the written authorization of the beneficiary (or of a person authorized to sign claims on his behalf under § 424.36) to receive the Part B payment for the services for which the entity pays. (4) Relieves the beneficiary of liability for payment for the service and will not seek any reimbursement from the beneficiary, his or her survivors or estate. (5) Submits any information CMS or the carrier may request, including an itemized physician or supplier bill, in order to apply the requirements under the Medicare program. (6) Identifies and excludes from its requests for payment all services for which Medicare is the secondary payer.
(b) Services paid for by the entity. An entity is not required to pay and claim reimbursement for all Part B services furnished to members of its plans. However, if it does not pay and claim reimbursement for all those services, it must establish in advance precise criteria for identifying the services for which it will pay and claim reimbursement.

## A. Voluntary Remand is Appropriate

HHS claims that it does not currently have an IPP in place for group health plans (like EWIF), and that the development and implementation of a new IPP will require: (1) the development of claims submission guidance and claim eligibility criteria consistent with 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66; (2) potential changes to its computer systems; and (3) the designation of Medicare contractor(s) to process IPP claims submitted by group health plans. HHS argues, and this Court agrees, that remand is appropriate.

Because HHS is singularly suited—due to its administrative and technical expertise—to develop an IPP, the Court remands this action to the agency for further administrative action.

> [I]t is an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action.
>
> This court has recognized the inherent authority of an agency to reconsider a prior decision. *Belville Mining Co. v. United States*, 999 F.2d 989, 997 (6th Cir. 1993) ("Even where there is no express reconsideration authority for an agency, however, the general rule is that an agency has inherent authority to reconsider its decision, provided that reconsideration occurs within a reasonable time after the first decision."); *see also Cissell Mfg. Co. v. United States Dep't of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996) (holding in a review of an adjudicative proceeding that "[i]t is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards").
>
> Accordingly, when an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons. Otherwise judicial review is turned into a game in which an agency is "punished" for procedural omissions by being forced to defend them well after the agency has decided to reconsider.

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004). Thus, where an agency requests a remand under the circumstances presented

here—to cure the very defect asserted by EWIF[8]—courts are to remand the case to the agency.[9] *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly

---

[8] Additionally, according to HHS:
> Once the agency develops and implements an IPP, EWIF will be given an opportunity to demonstrate that it qualifies as an entity described in 42 U.S.C. § 1395u(b)(6)(B), 42 C.F.R. § 424.66 under the new process developed by the agency. If it does qualify, EWIF will be permitted to submit, and Defendant will accept, for processing any eligible Medicare Part B claims. EWIF will then receive any Part B payments due. All existing Part B eligibility and payment provisions will apply. Moreover, Defendant will not deny on timeliness grounds any Part B IPP claims that were timely when Plaintiff made its December 6, 2007 request for indirect ... or any subsequent Part B IPP claims that would have been timely had the agency permitted Plaintiff to submit such claims for processing and payment. In other words, the time required for Defendant to implement the IPP will not count against EWIF in determining the Part B payment due for the claims EWIF submits through the IPP.

(Def.'s Mot. at 7.)

[9] EWIF contends that the Court should deny the motion to remand, and instead "declare HHS' duties and obligations, reject HHS' justifications for refusing to process [EWIF's] claims in the past, and order HHS to process the claims in accordance with the existing statutory and regulatory standards. Unless the Court declares HHS' duties and obligations, it is virtually certain that HHS will do nothing to process the claims in a timely manner in accordance with HHS' existing obligations." (Pl.'s Resp. at 5.) This Court does not find EWIF's argument persuasive. *See Shalala*, 192 F.3d 1011 ("Whether it is a court of appeals or a district court, under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards. Once, therefore, the district court held that the [agency] had misinterpreted [the statute], it should have remanded to the [agency] for further proceedings consistent with its conception of the statute. Not only was it unnecessary for the court to retain jurisdiction to devise a specific remedy for the [agency] to follow, but it was error to do so.") (internal quotations and citations omitted). Here, both parties agree that it would be appropriate, under 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66, for HHS to develop and implement an IPP available to group health plans (like EWIF). The purpose for remand, therefore, is for HHS to devise a process by which EWIF can submit its Medicare Part B claims for reimbursement consistent with 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66. Thus, while it is proper for this Court to remand for HHS to devise a process, it is improper for this Court to dictate the specific manner for HHS to devise such an IPP.

grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete."). This is so even where the record is found not to support the agency's action. *See County of Los Angeles v. Shalala*, 192 F.3d 1005, 1023 (D.C. Cir. 1999).

### B. Limits on Remand Period

EWIF argues that a deadline on remand is appropriate to ensure that HHS develops and implements the IPP in a timely manner. EWIF contends that such a constraint is necessary because HHS has been on notice of EWIF's claims for a considerable amount of time and has failed to act. EWIF's claims for reimbursement were filed in December 2007—more than two years ago—and this action was commenced in November 2008—over one year ago. *See Nat'l Fuel Gas Supply Corp. v. FERC*, 899 F.2d 1244, 1250 (D.C. Cir. 1990) (recognizing the potential inconvenience of remand on the non-agency party and that party's entitlement to a speedy resolution of its action, the court determined that a time limit on remand was appropriate, in part, because the agency "indicated that it would have no objection to affording expedited consideration ... on remand"). HHS, on the other hand, takes the position that, given competing priorities of the agency and the complexity of designing a new IPP, it cannot state precisely the total amount of time that will be needed to fully implement a new program. Further, HHS argues that, absent a finding of unreasonable delay, a time constraint would not be appropriate.

Court imposed deadlines on remand are extraordinary. *See Qwest Communications Intern., Inc. v. F.C.C.*, 398 F.3d 1222, 1238-39 (10th Cir. 2005) ("[I]t is clear that a court-imposed deadline for agency action constitutes an extraordinary remedy."); In re

*International Chemical Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992) ("[I]n extraordinary circumstances, this court will review claims of unreasonable agency delay.").

> Under [the Administrative Procedure Act] 5 U.S.C. § 706(1), [a court] may "compel agency action unlawfully withheld or unreasonably delayed."
>
> The U.S. Court of Appeals for the District of Columbia Circuit has set forth the following factors to guide courts in this determination: (1) the extent of the delay, (2) the reasonableness of the delay in the context of the legislation authorizing agency action, (3) the consequences of the delay, and (4) administrative difficulties bearing on the agency's ability to resolve an issue. To this we might expressly add consideration of the complexity of the task envisioned by a court' remand order.

*Qwest Communications Intern., Inc. v. F.C.C.*, 398 F.3d 1222, 1238-39 (internal quotations and citations omitted). Here, extraordinary circumstances have not been shown.

Accordingly, this Court declines to set a time limit on HHS's course of action on remand. To the extent concern exists about HHS's diligence on remand, mandamus may afford a remedy for undue delay. *See* In re *International Chemical Workers Union*, 958 F.2d at 1150 ("There is a point when the court must let the agency know, in no uncertain terms, that enough is enough.") (internal quotation and citation omitted); *Natural Res. Def. Council v. EPA*, 489 F.3d 1364, 1375 (D.C. Cir. 2007) ("We decline to set a two year limit on EPA's proceedings on remand as the NRDC requests; mandamus affords a remedy for undue delay."). The Court, therefore, fully expects HHS to proceed on remand in an expeditious manner, bearing in mind the consequences inherent in further delay.

**C. Attorney Fees**

EWIF argues that the purported justifications provided by HHS for refusing to process EWIF's claims are arbitrary and capricious pretexts[10] which ignore the applicable statutory and regulatory mandates. *See* 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66. According to EWIF,

> once this lawsuit was filed, HHS did not admit the errors of HHS' ways. Instead, it filed an answer which again denied that [EWIF] had any rights. HHS maintained that position through this litigation, until—after the close of discovery—HHS now concedes that 42 C.F.R. § 424.66 controls but—for reasons HHS still refuses to acknowledge—HHS has no mechanism for processing [EWIF]'s claims at this time.
>
> That conduct is itself an abuse of process, arbitrary, capricious and contrary to law. And that conduct has caused [EWIF] to incur substantial attorneys' fees which [it] would not have incurred if HHS had conceded, in early 2008, what it now concedes.
>
> As a result, [EWIF] should recover its attorneys' fees.

(Pl.'s Resp. at 11.)

The statute under which EWIF seeks fees, the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, requires that applications for fees may be made by a "prevailing party" within thirty days of a "final judgment" based on the full record of the case. *See* 28 U.S.C.

---

[10] HHS contends that its position was and remains substantially justified.
Indeed, the Secretary still believes it would be reasonable to deny EWIF's claims. It would also be reasonable not to devise an Indirect Payment Procedure for entities like EWIF, based on HHS's understanding the number of such entities—i.e., non-providers and non-suppliers of Medicare-eligible drugs—is relatively small, and because EWIF could have sought reimbursement under Medicare Part D rather than Part B for virtually all of the benefits in question here. HHS's willingness to devise a new Indirect Payment Procedure tailored for entities like the plaintiff, notwithstanding the availability of other approaches, does not make the Secretary's administrative position unreasonable or arbitrary and capricious.
(Def.'s Resp. at 7.)

§ 2412(d)(1)(B). This case is still pending,[11] and until such time as the case becomes "final," EWIF is not a "prevailing party." Accordingly, this Court denies EWIF's request for attorney fees.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion is DENIED without prejudice and Defendant's motion is GRANTED. This Court STAYS the case pending the publication and implementation of an Indirect Payment Process (IPP) by the Secretary of the United States Department of Health and Human Service (HHS).

HHS shall comply with all dictates of 42 U.S.C. § 1395u(b)(6)(B) and 42 C.F.R. § 424.66 in implementing the IPP and developing agency policy and guidance regarding the process. HHS is also is directed to file status reports within 90 days of the date of this Order, and at 60-day intervals thereafter.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: February 25, 2010

---

[11] The Court finds unpersuasive EWIF's contention that "where HHS asks the court for a remand, the Court should determine now that [EWIF] will be entitled to its fees, in an amount to be determined after when [sic] [EWIF] makes its formal application for fees." (Pl.'s Resp. at 11.) EWIF, however, cites no authority for its proposition that a voluntary remand is a "final judgment" under the EAJA. EWIF's request for attorney fees is, thus, premature.

    The Court also finds unpersuasive EWIF's contention that "[f]ees should also be awarded as a condition of remand by analogy with Rule 41(b) ... because HHS in effect seeks involuntary dismissal." (Pl.'s Resp. at 12.) EWIF, itself, acknowledges that "Rule 41(b) does not directly apply because it is HHS, not the plaintiff ..., which seeks what is, in effect, a voluntary dismissal. But justice requires that HHS compensate [EWIF] for the attorneys' fees which HHS has necessitated by its dilatory conduct in this litigation as well as its original arbitrary, capricious and unlawful behavior which made it necessary for [EWIF] to commence this litigation." (*Id.*)

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 25, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager